Good morning, Your Honors. I am Lawrence Moon, appearing on behalf of the plaintiff, trustee of the estate of Burton Walter Amos, in this case. I would like to reserve a little bit of time at the end for any rebuttal that might be appropriate. As the court is aware, plaintiff appeals the District Court's grant of a motion for summary judgment of its equal protection claims against the defendants in this case. We believe that if one takes a close look at the evidence that's been produced, particularly in light of the standards for determining a motion for summary judgment, that the District Court's finding that there was no tribal issue regarding a discriminatory policy of the City of Page, or more particularly one of its police officers on the night of the In nearly, this case sits nearly on all fours with that of R.K. Ventures. We have direct evidence of a discriminatory policy as summarized in a general statement that was made by the City of Page attorney to an attorney who at the time was a member of the Navajo Reservation.  appropriate to the Court's rebuttal to R.K. Ventures. Even if there were such a policy, what's the total evidence that they knew that he fell within a disfavored class? In other words, what made them think he was an Indian? We have circumstantial evidence of that. Primarily would be the location of the scene of the accident. The scene of the accident was in the desert that night, indicating that when they last, when they terminated their search that night due to their flashlights beginning to go dim and returned to the scene of the accident, they informed the officer in charge, Sergeant Yank, that the tracks were headed in a southerly direction towards the Indian Reservation. Mr. or Sergeant Yank has testified that he didn't recall when he first became aware that either the owner of the vehicle or the driver that night may have been from Glendale. So what he was thinking the night of the accident is clearly in question. There's no evidence that he had any information that the driver was or was not a Native American. What is also clear is that if Mr. Yank, Sergeant Yank, had assumed that the individual was not a Native American, how does he explain the decisions he made that night? If, in fact, he thought the individual was a resident of or from the Glendale area, which is approximately 200 miles, over 200 miles from that area, such an individual would have no knowledge of that area at all, or we could assume that such an individual would not have any knowledge of that area and its location to the Glen Canyon. Such an individual would also probably not know where the Indian Reservation was located that night. These are issues of fact that we believe, based on the inconsistencies in Sergeant Yank's testimony and the contradictory evidence that doesn't support his rationale for the decisions he made that night, we believe that these are issues that a jury should decide. But aren't you really asking the jury to speculate? I mean, I thought I heard you say in an earlier part of your presentation that he didn't know one way or the other whether the driver was a Native American or not, and you're not sure when he learned that the driver was from Glendale. As I understand it, the car had temporary plates so he couldn't run a computer check. All he could do was check to see if it was stolen by running the VIN number. That's correct, Your Honor. So if that's all you've got, what's the issue, the contested issue of fact versus a failure of proof to show that the motive was impermissible in calling off the search? Well, we have the statement of the city attorney indicating that there was a general policy of not pursuing runaway drivers, particularly in light of the fact that these drivers tend to have gone to another jurisdiction. In the case of those accidents occurring near the reservation, presumably that jurisdiction would be the Navajo reservation, and presumably those individuals would be Native American who would have comfort knowing not only where the reservation was, but that they could survive, if you will, after getting to the reservation. Thank you. Some of the additional circumstances that call into question Sergeant Yank's testimony following the accident, in the days and the weeks that followed, Sergeant Yank did nothing to follow up on that accident. As far as we know, he didn't report the accident to the statewide reporting service that I believe is sponsored by the Department of Transportation. He made no effort to locate either the owner of the vehicle or the alleged driver of the vehicle. Wait a second. Now, there was an accident report prepared, was there not? I mean, somebody was injured and went to the hospital, and I believe there's testimony was that the sergeant went to the hospital to try and follow up with the driver of the other vehicle. Are you saying that no police report was ever made of that incident? As far as we know, the report was not shared with the appropriate statewide authority. There may have been a report. So an accident report could have been prepared, but it wasn't sent to the Department of Public Safety like it's supposed to be? That's correct, Your Honor. That's our understanding. If such a report had been shared with the State Agency, the victim's father would not have had such trouble locating, finding out what happened to his son. As it was in going through the normal course of investigation of a matter where a person presumed to be driving his vehicle disappears, one of the first systems that a police agency would search would be the statewide system where all the jurisdictions throughout the state register or give notice of accidents. What did your discovery show with regard to why the report was not forwarded to the state? Actually, Sergeant Yank testified that he didn't know if it was reported. It wasn't his personal responsibility to do that. So that's a clerical function of somebody at the Page Police Department who just didn't do it? As far as Sergeant Yank knew, right. He couldn't testify one way or the other whether it was done, and we weren't able to confirm that. Right. I think I'll reserve the balance of my time. Thank you. You may. Thank you. May it please the Court. I'm Randy Warner with the firm of Jones, Scutman, Hockley, representing the defendants. Let me first get to the issue of the alleged statement by Mr. Stoddard. I want to put it in context, because there isn't a statement from Mr. Stoddard.   There is a statement from Mr. Edmonds reporting what Mr. Stoddard says. And here's what Mr. Edmonds says about it. He says in his deposition at pages 19 and 20, well, Mr. Stoddard didn't really say this. Mr. Stoddard didn't say we don't search for Native Americans. I drew that conclusion myself. His exact words, yeah, I admit that's my conclusion. He didn't say that. What did he say he said? He says, what he says that Mr. Stoddard says is, yes, sometimes we have people in runaway and hit and run accidents flee the scene. Some of those people flee to other jurisdictions. The Utah border is close. The Navajo reservation is close. The conclusion that because of that, we do search for white people and we don't search for Native Americans is the conclusion that Mr. Edmonds draws. Yeah. And but when when Evans when he reported what he had been told, he said something about what didn't he say that we find a lot of people just run back to the Indian reservation, then they call in the next morning and report their vehicle stolen. Correct. And that's what he says in the affidavit. And then when we depose him on it, he says the next step in the affidavit is therefore our general policy is not to search for runaway drivers at all because these people run away and they call the next day for their car. Is that a does that disclose a racially discriminatory animus? It does not, Your Honor. Let me let me back up a second. First, he backs away from the statement of deposition and he says, well, step one is what Stoddard says. We have this problem. People run away. Sometimes they go to the Navajo reservation. And step two is, therefore, there's a policy of not searching for runaway drivers. Step two is what Edmonds adds. And he says in his deposition, yeah, that's my conclusion. But even step two doesn't get you discrimination because it is still a neutral policy that treats all people the same, irrespective of whether whether Mr. Amos is Native American or white. Anyone who runs away. I'm sorry. Anyone who runs away. Anyone who runs away from a hit and run accident. Let me get to to the hit and run accident. Well, they did search to some extent. Right. I mean, they called out a helicopter. They searched to a great extent. And there's no evidence in this case of this police department searching any differently or any greater for any other type of runaway driver. And that's the real heart of the discrimination case. The allegation is you didn't search for this individual as well as you should have or as well as you would have if you knew that he was a white person. And yet there's no, not even anecdotal evidence that in some other incident this police department searched better for someone they knew was white. There's no statistical evidence. There's no evidence of any racially derogatory comments of the kind of Well, what do you suppose? I mean, I don't like hypotheticals, but I'll give you one anyway. Suppose that they hadn't searched very long for him. What is the relevance and suppose that there was, and suppose there were an issue about the motivation or the reason. What is the relevance of the fact that he was, you know, a white As I understand it, the body wasn't found for a year because it was at the bottom of a Three years, Your Honor. Three years. What is the relevance of that? I don't believe there's any relevance at all. The relevant incidents happened the night of the accident, arguably, you know, the next day. But really what we're talking about is what happened that night. So whether they found remains Well, what I'm saying is, are you arguing, is there an argument to be made that they The argument is actually the flip side of that. And this is our causation argument, really sort of a separate argument from our argument about showing discriminatory intent. Yeah, there's no evidence that this individual would have been found. And the reason is, we don't know if he fell off that cliff within the first hour or within a day or within a week. We just have no way of saying that. And it's the plaintiff's burden to show causation, and they can't do it. But that is a separate argument from the argument of the Excuse me? Are we in summary judgment? We're in summary judgment. That was an argument we raised. The judge didn't decide summary judgment on that ground. Let me direct you to a case that actually plaintiff cites called Bingham v. Manhattan Beach, which really gets to the heart of this case. And Judge Reinhart's dissent puts a pretty fine point on it. If you're going to allege discrimination, you've got to allege something that shows there was a discriminatory animus in this case. Something. Racial comments like we had in the R.K. Ventures case. Difference in treatment. In a case where certain people were actually treated differently, which we don't have in this case, and which we did have in R.K. Ventures. And in the Bingham case, they say, you know, look, just because there was a black man pulled over by white police doesn't mean there's discrimination. In this case, Mr. Moon's main argument, I take it, is, well, there's really no other way to explain why they didn't search more for him than discrimination. And there's actually a pretty good explanation. After an hour of searching, after calling out a helicopter, in a pretty desolate country, police concluded, look, this guy's got a two-hour head start on us. There's really no practical way we're going to find him. Really are all the two-hour head start. The police didn't get there until that long after the accident, or they didn't start searching until that long after? The timing is initial police officers get there within five or ten minutes. The small community, the police station overlooks the site. I know you do. Some other officers show up, and by the time the scene is sort of secured, I believe they start doing their search about a half an hour after the accident, walking into the desert. And this is all when it's dark. The accident happened at 8 o'clock, and it was October. It was dark. Any further questions? Well, I feel guilty leaving time on the table. No, that's fine. Thank you.  So specifically regarding the statement of the city of Page attorney regarding the policy of police of not pursuing hit-and-run drivers as frequently due to their abscondence to the outlined jurisdictions, if you look at the lower case, it states that direct evidence of discriminatory policies is typically unavailing. And this statement is just a general statement of the policy that we allege pervaded the police department. We'd also note that the chief of police was terminated due to what the city manager described as discriminatory policies against Native Americans. That was in hiring? Pardon? In hiring? That was the basis for the chief's termination after the accident had occurred. You said for his policies toward Native Americans. In what respect? I believe the termination letter alluded to the fact that the chief had not hired any ñ well, it stated outright that the chief had not hired any Native Americans during the time that he was chief of police. So we do have additional evidence of a discriminatory policy throughout the police department. If the court should find that there's inadequate evidence of a policy within the department, however, that doesn't preclude a finding that the supervisor in charge that night, Sergeant Yank, may have been motivated by discriminatory motivations in connection with his ñ the decisions he made whether or not to continue a search for the victim that night. I'd just close in commenting that this, again, is at the motion for summary judgment. The plaintiffs are entitled to all reasonable and favorable inferences that may support their case. Thank you, Your Honor. Thank you. The case just argued is submitted for decision. That concludes the court's calendar for this morning, and the court stands adjourned. Thank you. Thank you.
judges: Schroeder, Canby, Tallman